# **EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **SCOTT COLLINS,** on behalf of himself and others similarly situated, | |
| **Plaintiff,** | Case No. 1:24-cv-6726 |
| v. | Judge Mary M. Rowland |
| **NTN BEARING CORPORATION OF AMERICA, NTN USA CORPORATION,** and **AMERICAN NTN BEARING MANUFACTURING CORPORATION,** | |
| **Defendants.** | |

## MEMORANDUM OPINION & ORDER

Plaintiff Scott Collins has sued Defendants NTN Bearing Corporation of America, NTN USA Corporation, and American NTN Bearing Manufacturing Corporation (collectively, "NTN") under the Illinois Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/1, *et seq*. Before the Court is NTN's motion to dismiss Collins's complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 5). For the reasons stated herein, NTN's motion is denied.

## BACKGROUND

In 2023, Collins applied to work at NTN's Elgin, Illinois facility. (Dkt. 1, Ex. A ¶ 31). Collins alleges that NTN asked him to take a physical exam via a third party as part of the pre-employment application process and as a condition of his employment. (Dkt. 1, Ex. A ¶ 32). The medical professional who performed the exam

1

asked Collins questions regarding his family medical history, including whether there was a history of high cholesterol, heart disease, or high blood pressure in his family. (Dkt. 1, Ex. A ¶ 34). NTN did not instruct Collins to refuse to answer questions about his family medical history. (Dkt. 1, Ex. A ¶ 35). As a precondition of his employment with NTN, and as part of NTN's pre-employment application, Collins was required to answer these questions. (Dkt. 1, Ex. A ¶ 53). Collins worked for NTN for approximately three months. (Dkt. 1, Ex. A ¶ 36).

Collins filed this action individually and on behalf of similarly situated individuals in Illinois who, within the applicable limitations period, applied for employment with NTN or were employed by NTN, and from whom NTN requested, solicited, required and/or obtained genetic information, including family medical history, in connection with the person's application for employment or the person's employment with NTN. (Dkt. 1, Ex. A ¶ 38). Collins alleges NTN violated GIPA by directly or indirectly soliciting, requesting, and requiring information about the manifestation of diseases or disorders in family members of potential employees as a condition of employment or pre-employment applications. (Dkt. 1, Ex. A ¶¶ 27, 53-54). On July 31, 2024, NTN removed the case to this Court. (Dkt. 1). Before the Court is NTN's motion to dismiss. (Dkt. 5).

## **LEGAL STANDARD**

A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information

2

to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

## DISCUSSION

NTN advances several interconnected arguments for why dismissal is warranted. These arguments can be distilled down to: 1) Collins failed to allege that providing genetic information was a condition of employment or the preemployment application and 2) at most, Collins accuses NTN of inadvertently requesting family medical history. The Court will address NTN's arguments in turn.

   **a. Collins adequately alleges that NTN solicited genetic information "as a condition of" his preemployment application and employment.**

Under Section 25(c)(1) of GIPA, an employer "shall not directly or indirectly . . . solicit, request, [or] require . . . genetic information of a person or a family member of the person . . . as a condition of employment [or] preemployment application." 410 ILCS 513/25(c)(1). NTN argues that Collins's GIPA claim fails because Collins alleges that a physical examination—not genetic information—was a condition of

3

employment with NTN. (Dkt. 5 at 4). In support, NTN states that Collins failed to allege that he responded to the questions about family history and that Collins failed to allege that NTN would have declined to hire him if he had not answered questions about his family's medical history. *Id.*

Collins alleges that he applied for a job with NTN, he had to take a physical exam as a part of the application process, the exam included questions about his genetic information, NTN did not instruct him to refuse to answer questions about his genetic information, and he was required to answer the questions. (Dkt. 1, Ex. A ¶¶ 31-35, 53). These allegations are adequate at this stage to state a claim that NTN requested Collins's genetic information as a condition of employment or a preemployment application. NTN argues that Collins "allege[d] in conclusory fashion that he was, by virtue of being asked during a mandatory event, effectively required or forced to disclose his family medical history." (Dkt. 22 at 2) (internal citations omitted). Taking all of Collins's well-pleaded facts as true, as required in a motion to dismiss, *Lax*, 20 F.4th at 1181, the reasonable inference is that Collins provided his family medical history because failure to do so would have caused him not to complete his preemployment application and not to be hired by NTN.

NTN also argues that "no reasonable factfinder could conclude that NTN intended [that] the [third-party] provider would ask questions about family medical history" in the absence of allegations that: NTN directed the third-party provider to inquire about an employee's family medical history; NTN was aware such questions were part of the physical examination; or NTN received genetic information from the

4

third-party provider following the examinations. (Dkt. 5 at 7-8).[1] In other words, NTN argues that it is outside of GIPA's reach because a third party completed the examination. But a defendant can be liable under Section 25(c) of GIPA if they "directly *or indirectly*" solicit genetic information from a prospective employee. 410 ILCS 513/25(c)(1) (emphasis added).

### b. GIPA's "inadvertent" exclusion is an affirmative defense that Collins was not obligated to address in his complaint.

GIPA provides that "inadvertently requesting family medical history by an employer…does not violate this Act." 410 ILCS 513/25(g). NTN argues that any solicitation of genetic information was "inadvertent" and thus not actionable under GIPA. (Dkt. 5 at 6). In response, Collins argues the inadvertent exception is more appropriately raised as an affirmative defense that, if even applicable, raises factual issues that must be determined at summary judgment or trial, not at the pleading stage. (Dkt. 14 at 6).

An affirmative defense "limits or excuses a defendant's liability even if the plaintiff establishes a prima facie case." *Bell v. Taylor*, 827 F.3d 699, 704–05 (7th Cir. 2016) (quoting *Tober v. Graco Children's Prods., Inc.*, 431 F.3d 572, 579 n.9 (7th Cir. 2005)). A plaintiff is not required to address potential affirmative defenses in his pleading. *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022). The court in *Henry v. AbbVie, Inc.*, No. 23 CV 16830, 2024 WL 4278070, at *7 (N.D.

---

[1] NTN also argues that it was not obligated to anticipate the third-party provider's "extraneous" questions about family medical history. (Dkt. 5 at 6). This Court tends to agree with Collins that medical history questions are a common feature of physical exams such that those questions are not "extraneous". (Dkt. 14 at 9). Importantly, whether the request was extraneous or not, at this stage Collins has sufficiently pleaded that NTN directly or indirectly solicited his genetic information.

5

Ill. Sept. 24, 2024) (Shah, J.) considered whether the inadvertent exception was an affirmative defense. The court found that the inadvertent exception is not an element of a plaintiff's GIPA claim and is instead an affirmative defense. *Henry*, 2024 WL 4278070, at *7. This Court agrees with the *Henry* court's reasoning and adopts the same rule here. The inadvertence exception cannot form the basis for dismissing a GIPA claim at this stage.

But even if it could, Collins has adequately pleaded that the inadvertent exception does not apply. Both parties rely on cases interpreting the federal Genetic Information Nondiscrimination Act's ("GINA") inadvertent disclosure exception when discussing whether NTN inadvertently requested and obtained Collins's genetic information. GIPA incorporates protections from GINA. *See* 410 ILCS 513/25(a) ("An employer ... shall treat genetic testing and genetic information in such a manner that is consistent with the requirements of federal law, including but not limited to the Genetic Information Nondiscrimination Act of 2008 . . . ."). Under GINA, an employer's request is inadvertent if it directs the individual "not to provide genetic information" but still results in genetic information being disclosed in response. 29 C.F.R. § 1635.8(b)(1)(i)(A). Even absent this language, an employer's request may be inadvertent if the employer's "request for medical information was not likely to result in [it] obtaining genetic information," such as when "an overly broad response is received in response to a tailored request for medical information." *Id.* § 1635.8(b)(1)(i)(C) (internal quotations omitted).

6

Collins alleges upon information and belief that NTN does not instruct the medical professionals who complete the required medical evaluations to refrain from asking questions regarding family medical history. (Dkt. 1, Ex. A ¶¶ 25, 35).[2] Collins also alleges that the medical provider specifically asked whether there was a history of high cholesterol, heart disease, or high blood pressure in his family. (Dkt. 1, Ex. A ¶ 34). This is sufficient to allege, at the motion to dismiss stage, that NTN's request was not inadvertent. The GINA cases that NTN cites are inapposite. (Dkt. 5 at 7); *see Montgomery v. Union Pac. R.R. Co.*, 2018 WL 6110930, at *9 (D. Ariz. Nov. 21, 2018) (denying summary judgment on the plaintiff's GINA claim because defendant requested medical information that it should have known could contain genetic information); *Tedesco v. Pearson Educ., Inc.*, 2021 WL 2291148, at *6 (E.D. La. June 4, 2021) (discussing whether defendant obtained "genetic information" as GINA defines it where the family medical history involved suicide which is not clearly tied to genetics).

## CONCLUSION

For these reasons, the Court denies Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6). (Dkt. 5).

---

[2] NTN argues that Collins alleged that NTN was obligated under GIPA to affirmatively advise him that he need not answer any question about genetic information. (Dkt. 5 at 5-6). In response, Collins clarified that is not his allegation. (Dkt. 14 at 4-5).

7

E N T E R:

Dated: February 19, 2025

_Mary M Rowland_

MARY M. ROWLAND
United States District Judge

8